UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELISSA VACCARO,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>    Defendant. | Case No. 16-cv-03220-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT UNDER RULE 52 AND DENYING DEFENDANT'S MOTION FOR JUDGMENT UNDER RULE 52**<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>[Re: ECF 31, 32] |

**I.      INTRODUCTION**

Plaintiff Melissa Vaccaro ("Vaccaro") filed this ERISA[1] action against Defendant Liberty Life Assurance Company of Boston ("Liberty") following Liberty's denial of her claim for long term disability benefits ("LTD benefits") under a group insurance policy that Liberty issued to Vaccaro's former employer, NetApp, Inc. ("NetApp"). The policy is one component of NetApp's Group Health Plan, a welfare benefit plan offered by NetApp to provide its employees with medical, dental, vision, life, and disability benefits.

The Liberty policy classifies employees as either "Class 1" or "Class 2." The primary difference between the two classes is the showing required to establish disability. Class 1

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

employees need show only an inability to perform their "own occupation" in order to be considered disabled through the policy coverage period. In contrast, Class 2 employees must show an inability to perform their "own occupation" for the first 24 months of coverage and thereafter must show an inability to perform "any occupation" for the remainder of the coverage period. Liberty classified Vaccaro as a Class 2 employee and denied her claim for benefits. Vaccaro contends that she is a Class 1 employee, and she filed this action to obtain a determination that she is entitled to past-due and future LTD benefits under the own occupation standard applicable to Class 1 employees. After the litigation commenced, Liberty reversed its prior claim denial and paid all past-due benefits. However, Liberty affirmed its classification of Vaccaro as a Class 2 employee.

The Court conducted a bench trial on the parties' cross-motions for judgment under Federal Rule of Civil Procedure 52. In light of Liberty's disability determination and payment of past-due benefits, the only substantive issue remaining for disposition is whether Vaccaro is a Class 1 employee or a Class 2 employee. Having considered the briefing, the evidence, and the oral argument presented at the bench trial, the Court concludes that she is a Class 1 employee. The Court therefore GRANTS Vaccaro's Rule 52 motion and DENIES Liberty's Rule 52 motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 52 provides that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "In a Rule 52 motion, as opposed to a Rule 56 motion for summary judgment, the court does not determine whether there is an issue of material fact, but actually decides whether the plaintiff is [entitled to benefits] under the policy." *Prado v. Allied Domecq Spirits and Wine Group Disability Income Policy*, 800 F. Supp. 2d 1077, 1094 (N.D. Cal. 2011) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999)). In making that determination, the court must "evaluate the persuasiveness of conflicting testimony and decide which is more likely true" in order to make findings of fact that will be subject to review under a clearly erroneous standard if appealed. *Kearney*, 175 F.3d at 1095.

2

## III. FINDINGS OF FACT

### A. Vaccaro's Employment

1. Vaccaro was employed by NetApp in its human resources department. Madrigal Decl. ¶ 10, ECF 31-5.

2. Her "Job Title," as stated in the "NetApp Job Description," was "HR Program Mgr 5." NetApp Job Description, Exh. 6 to Madrigal Decl., ECF 31-11.

3. Her "Job Code" per the NetApp Job Description was "445." *Id.*

4. Her "Job Level" per the NetApp Job Description was "Individual Contributor 5." *Id.*

5. Instead of using the official job title stated in the NetApp Job Description, Vaccaro and/or her manager chose to use the title "Global Leadership and Talent Development Program Manager" for Vaccaro's position. Madrigal Opp. Decl. ¶ 14, ECF 33-12.

### B. Vaccaro's Disability

6. In 2012, Vaccaro began having symptoms of pain and fatigue. Vaccaro Decl. ¶ 8, Exh. 1 to Keenley Decl., ECF 32-1.

7. Despite medical care, her symptoms worsened throughout 2013 and 2014. *Id.* ¶ 9.

8. She tried working from home three days a week, but she found it increasingly difficult to perform her job even with that accommodation. *Id.* ¶ 10.

9. Her cognitive abilities began to deteriorate, particularly in the areas of memory and comprehension. *Id.* ¶ 6.

10. By April 2015, her abilities deteriorated to such an extent that she was unable to continue performing her job. *Id.* ¶¶ 2, 6.

11. Vaccaro's last day of work was April 29, 2015. Claim Denial at 1, Exh. 8 to Keenley Decl., ECF 32-1.

### C. NetApp Group Health Plan and Liberty Policy

12. Vaccaro was a participant in NetApp's Group Health Plan. The Group Health Plan initially was established effective June 1, 1996. Madrigal Decl. ¶ 4, ECF 31-5.

13. The Group Health Plan was amended and restated effective January 1, 2015 ("2015 Group Health Plan"). *See* 2015 Group Health Plan, Exh. 10 to Keeney Decl., ECF 32-1.

14. The Group Health Plan again was amended and restated effective January 1, 2016 ("2016 Group Health Plan"). *See* 2016 Group Health Plan, Exh. 1 to Madrigal Decl., ECF 31-6.

15. The relevant provisions of the 2015 Group Health Plan and the 2016 Group Health Plan do not differ materially. Accordingly, this Order refers to "the Group Health Plan" and provides citations to both the 2015 Group Health Plan and the 2016 Group Health Plan.

16. The first page of the Group Health Plan states that NetApp, the Plan Sponsor and the Plan Administrator, "at any time and from time to time may amend, change or terminate the Plan without the consent of any Covered Person or any other persons entitled to receive payment of benefits under the Plan." 2015 Group Health Plan at i, Exh. 10 to Keeney Decl., ECF 32-1; 2016 Group Health Plan at i, Exh. 1 to Madrigal Decl., ECF 31-6.

17. The Group Health Plan is defined to incorporate "Component Plans," meaning medical, dental, and other benefit plans adopted by NetApp. 2015 Group Health Plan at 1, Exh. 10 to Keeney Decl., ECF 32-1; 2016 Group Health Plan at 2, Exh. 1 to Madrigal Decl., ECF 31-6.

18. The Group Health Plan grants NetApp, as the Plan Administrator, authority to "interpret the terms and provisions of the Plan" and to "determine eligibility under the Plan." 2015 Group Health Plan at 24, Exh. 10 to Keeney Decl., ECF 32-1; 2016 Group Health Plan at 24, Exh. 1 to Madrigal Decl., ECF 31-6.

19. One of the Component Plans which is incorporated into the Group Health Plan is an insurance policy for LTD benefits issued by Liberty in 2012 and reissued effective January 1, 2015. 2015 Group Health Plan at A-1, Exh. 10 to Keeney Decl., ECF 32-1; 2016 Group Health Plan at A-2, Exh. 1 to Madrigal Decl., ECF 31-6; Madrigal Decl. ¶ 5, ECF 31-5.

20. The Liberty policy reissued in 2015 ("2015 Policy") provides LTD benefits for two classes of employees, Class 1 employees and Class 2 employees. 2015 Policy at SCH-1, Exh. 2 to Madrigal Decl., ECF 31-7.

21. The 2015 Policy defines Class 1 employees as follows:

Class 1:  CEO, President, Vice President, Corporate Officers, Directors, Managers, and Engineers

2015 Policy at SCH-1, Exh. 2 to Madrigal Decl., ECF 31-7.

22. The 2015 Policy defines Class 2 employees as follows:

Class 2:      All other Employees

2015 Policy at SCH-1, Exh. 2 to Madrigal Decl., ECF 31-7.

23. In order to demonstrate disability under the 2015 Policy, a Class 1 employee must show that "as a result of an Injury or Sickness, he is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way." 2015 Policy at DEF-3.2, Exh. 2 to Madrigal Decl., ECF 31-7.

24. A Class 2 employee must make the same showing to obtain LTD benefits under the 2015 Policy for the first 24 months of coverage. *Id.* However, after the first 24 months of LTD benefits, a Class 2 employee additionally must show that "as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity." *Id.*

25. A Class 1 employee need not demonstrate inability to engage in "any occupation" to continue receiving LTD benefits after the first 24 months. *Id.*

**D.    Liberty's Denial of LTD Benefits under the 2015 Policy**

26. Vaccaro submitted a claim for LTD benefits under the 2015 Policy on July 2, 2015. *See* Claim Denial, Exh. 8 to Keenley Decl., ECF 32-1.

27. Liberty provided benefits to Vaccaro under a reservation of rights while it conducted its initial review of her claim, but on September 14, 2015, it issued a written denial based on its determination that Vaccaro was not disabled from performing her own occupation. *Id.*

28. While Liberty did not state expressly that it had classified Vaccaro as a Class 2 employee, it quoted the 2015 Policy language applicable to Class 2 employees, stating that Vaccaro initially was required to show inability to perform her "own occupation" and then after 24 months was required to show inability to perform "any occupation." *Id.*

29. Vaccaro appealed the denial of benefits by letter dated March 10, 2016. Appeal, Exh. 9 to Keenley Decl., ECF 32-1. Her appeal expressly requested review of "1. Your determination that Ms. Vaccaro is not disabled within the meaning of the Plan," and "2. Your determination that

5

1  Ms. Vaccaro is in Class 2 under the terms of the Plan." *Id.*

30. On April 26, 2016, Liberty responded by letter stating that it was invoking its statutory right to extend the normal 45-day deadline for decision on appeal by an additional 45 days for a total of 90 days to render a decision. April 2016 Letter, Exh. 11 to Keenley Decl., ECF 32-1.

31. Liberty therefore had until June 8, 2016 – 90 days after March 10, 2016 – to render a decision on Vaccaro's appeal. It is undisputed that Liberty failed to issue an appeal decision by June 8, 2016.

32. Vaccaro filed the complaint in the present action on June 10, 2016, alleging that she exhausted her administrative remedies in light of Liberty's failure to render a decision within the time provided by law. Compl. ¶ 20, ECF 1. She asserts a single cause of action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), seeking a determination that she is entitled to past-due and future LTD benefits as a Class 1 employee. Compl., ECF 1.

**E.     Post-Lawsuit Grant of LTD Benefits and Denial of Class 1 Status**

33. On June 14, 2016, Liberty sent a letter to Vaccaro's counsel stating: "We completed our appeal review of Ms. Vaccaro's claim and overturned the prior decision to close her claim. Any benefits that may be payable will be sent under separate cover." Appeal Decision, Exh. 7 to Keenley Decl., ECF 32-1.

34. The letter did not address Vaccaro's appeal regarding her classification as a Class 2 employee. *Id.*

35. On June 21, 2016, Vaccaro's counsel sent Liberty a letter noting that Liberty's June 14 letter had not addressed Vaccaro's appeal of her classification and stating that Vaccaro assumed that Liberty's silence constituted agreement that she is a Class 1 employee. June 21, 2016 Letter, Exh. 12 to Keenley Decl., ECF 32-1.

36. On July 5, 2016, Vaccaro's counsel forwarded to Liberty a copy of the Social Security Administration's determination that Vaccaro is disabled and entitled to disability benefits. July 5, 2016 Letter, Exh. 6 to Keenley Decl., ECF 32-1.

37. On July 12, 2016, Liberty sent Vaccaro's counsel a letter stating that it had confirmed Vaccaro's status as a Class 2 employee with NetApp. July 12, 2016 Letter, Exh. 13 to Keenley

Decl., ECF 32-1. Liberty deferred to NetApp's determination that Vaccaro is a Class 2 employee. *Id.*

### F. Post-Lawsuit Amendment to Liberty Policy

38. In December 2016, Liberty and NetApp amended the 2015 Policy effective January 1, 2017 ("2017 Policy").[2] Madrigal Decl. ¶ 7, ECF 31-5; Madrigal Decl. in Support of Motion to Quash Subpoena ¶ 7, ECF 24-1.

39. The 2017 Policy changes the definition of Class 1 employee as follows:

> Class 1: All Employees with a Job Level Code of "CEO," "President," "Vice President," "Corporate Officer," any Job Level Code that includes the term "Director," "People Manager," and certain "Engineers." The only engineers that fall into Class 1 are listed as follows: MTS HW 1-6, MTS QA 1-6, MTS SW 1-6, Technical Director HW 6-7, Technical Director QA 6, and Technical Director SW 6-7.

2017 Policy at SCH-1, Exh. 3 to Madrigal Decl., ECF 31-8.

40. The 2017 Policy also adds the following language, which does not appear in the 2015 Policy:

> The determination of whether an employee is categorized as Class 1 or Class 2 is made solely at the discretion of the Plan Sponsor based on the Job Level Code. It is not made based on the employee's job title, and not every employee with a job title including the words "Director," "Manager," or "Engineer," for example, will be a Class 1 Employee. Only those with the corresponding Job Level Codes may fall into Class 1 or Class 2. "Job Level Code" is defined as the job level codes assigned internally by the Plan Sponsor. The Job Level Code is independent of and supersedes the job title.

2017 Policy at SCH-1, Exh. 3 to Madrigal Decl., ECF 31-8.

41. The 2017 Policy does not change the definition of Class 2 employees, retaining the definition set forth in the 2015 Policy:

> Class 2: All other Employees

2017 Policy at SCH-1, Exh. 3 to Madrigal Decl., ECF 31-8.

---

[2] The Court finds it most sensible to refer to the two Liberty policies by their effective dates and thus refers to the earlier version as "the 2015 Policy" and the later version as "the 2017 Policy." The Order differs from the parties' briefs in this respect, as Vaccaro refers to the earlier version as "the 2016 Policy," presumably because her claim arose in 2016, while Liberty refers to the later version as "the 2016 Amended Policy," presumably because the amendment was made in December 2016.

7

42. It is undisputed that Vaccaro is not a Class 1 employee under the amended definition set forth in the 2017 Policy.

### III. CONCLUSIONS OF LAW

A participant in an ERISA plan may bring a civil action under § 502(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Vaccaro filed this suit to recover past-due benefits as a Class 1 employee and clarify her rights to future benefits as a Class 1 employee. Compl., ECF 1.

After the lawsuit was filed, Liberty determined that Vaccaro is disabled under the own occupation standard and paid her all past-due benefits. However, Liberty affirmed its classification of Vaccaro as a Class 2 employee. Consequently, while the claim for past-due benefits no longer is at issue, Vaccaro's classification as a Class 1 or Class 2 employee remains for disposition.

Liberty suggests that the issue of Vaccaro's classification is not yet ripe because the distinction between the two classes "does not come into effect until an insured has received LTD benefits for two years" and "Plaintiff's claim has not yet reached this milestone." Def.'s Reply at 5, ECF 35. Liberty's framing of the issue in this manner is not supported by the policy language. Under both the 2015 Policy and the 2017 Policy, an employee's classification as Class 1 or Class 2 determines the showing which must be made to establish entitlement to LTD benefits. If an employee is classified as Class 1, he or she must show disability under the own occupation standard to be entitled to benefits, and those benefits continue throughout the coverage period subject to proof of continuing disability. Nothing in the policy suggests that the 24 month mark has any significance for a Class 1 employee, or that the determination whether an employee is in Class 1 or Class 2 occurs at the 24 month mark.

Moreover, Liberty's current position is at odds with its treatment of Vaccaro's claim. When Vaccaro appealed her classification, Liberty could have informed her that the issue would not be ripe until the 24-month mark. Liberty instead denied Vaccaro's claim for Class 1 benefits on the basis that it affirmed its classification of Vaccaro as a Class 2 employee. Having made that

8

determination and communicated it to Vaccaro, Liberty cannot reasonably argue that Vaccaro's classification is not ripe for review. Vaccaro appropriately seeks review of Liberty's denial of benefits under Class 1 and clarification as to her future entitlement to benefits as a Class 1 employee.

### B. The Standard of Review is De Novo

Having determined that Liberty's claim decision is appropriate for review under § 502(a)(1)(B), the Court next must determine what standard of review applies. "A denial of ERISA benefits challenged under 29 U.S.C. § 1132 'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 691 (9th Cir. 2017) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "If an insurance contract has a valid discretionary clause, the decisions of the insurance company are reviewed under an abuse of discretion standard." *Id.* at 691-92. The Group Health Plan expressly grants NetApp discretionary authority to interpret and determine eligibility under the Group Health Plan, including Component Plans such as the Liberty policy. Accordingly, absent state legislation directed toward discretionary clauses, the standard of review would be abuse of discretion. In California, however, such discretionary clauses are void and unenforceable. *See* Cal. Ins. Code § 10110.6. For that reason the parties agree that the standard of review in this case is de novo, and the Court concurs. *See Orzechowski*, 856 F.3d at 695-96 (holding that de novo standard applied because ERISA plan's discretionary clause was void under California Insurance Code § 10110.6).

"When a district court reviews de novo a plan administrator's determination of a claimant's right to recover long term disability benefits, the claimant has the burden of proving by a preponderance of the evidence that he was disabled under the terms of the plan." *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1162-63 (9th Cir. 2016). "[T]he court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). While it ordinarily considers only the

9

United States District Court
Northern District of California

administrative record in determining disability, the court may consider additional evidence "when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (internal quotation marks and citations omitted).

In the present case, Liberty has conceded Vaccaro's disability under the own occupation standard and her entitlement to past-due benefits. The crux of the parties' dispute is whether Vaccaro is a Class 1 employee or a Class 2 employee. If the former, Liberty's determination that Vaccaro is disabled under the own occupation standard establishes her entitlement to future LTD benefits subject only to proof of continued disability under that standard. If the latter, Liberty's determination that she is disabled under the own occupation standard establishes her entitlement to only 24 months of benefits, after which she would be required to show disability under the any occupation standard to continue receiving benefits.

### C. The 2015 Policy Governs

The parties disagree as to which policy governs the determination of Vaccaro's status as a Class 1 or Class 2 employee, the 2015 Policy or the 2017 Policy. Vaccaro contends that it is the former while Liberty contends it is the latter. For the reasons discussed below, the Court concludes that the 2015 Policy governs.

#### 1. The Governing Policy is the Policy in Effect when the ERISA Cause of Action Accrued

In an ERISA action to recover disability insurance benefits, the governing plan is the one in effect at the time the ERISA cause of action accrued. *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159-60 (9th Cir. 2001). In *Grosz-Salomon*, one version of the LTD policy was in effect when the claimant became disabled and began receiving benefits, but an amended version of the policy was in effect when those benefits were terminated. The Ninth Circuit held that since employees' rights to disability benefits are not vested, an employer has the right to amend its long term disability plan at any time and to apply the amended version even to employees receiving benefits under the original plan. *Id.* at 1160. Noting that the long term disability plan had been revised in 1993, the Ninth Circuit stated that "[b]ecause Grosz–Salomon's

cause of action accrued several years later, in December 1997, this court must look to the revised plan." *Id.* at 1160-67.[3]

### 2. The 2015 Policy was in Effect when Vaccaro's ERISA Cause of Action Accrued

A cause of action accrues "when the plaintiff can file suit and obtain relief." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013). Under ERISA, that moment occurs "either at the time benefits are actually denied, or when the insured has reason to know that the claim has been denied." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010) (internal quotation marks and citation omitted). Because ERISA and its regulations require plans to provide an internal review process, and participants are required to exhaust internal review before filing suit, a participant's cause of action under ERISA generally accrues when the plan issues a final denial. *Heimeshoff*, 134 S. Ct. at 610. However, the Supreme Court has stated expressly that when a plan fails to resolve an internal appeal within the time provided under ERISA regulations, "the participant 'shall be deemed to have exhausted the administrative remedies'" and "is entitled to proceed immediately to judicial review." *Id.* at 613 (quoting 29 C.F.R. § 2560.503–1(*l*)).

#### a. The ERISA Cause of Action Accrued upon the Expiration of Liberty's June 8, 2016 Deadline to Issue an Appeal Decision

Vaccaro appealed Liberty's claim denial by letter dated March 10, 2016. She requested review of both Liberty's adverse disability determination and its classification of her as a Class 2 employee. Under applicable regulations, Liberty had 45 days to resolve the appeal with the option to extend that period for an additional 45 days. *See* 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3)(i);

---

[3] The insurer terminated Grosz-Salomon's benefits in December 1997 but it did not issue a final denial of her claim until August 1998. *Grosz-Salomon*, 237 F.3d at 1158. The decision's reference to 1997 as the accrual date could be read to suggest that an ERISA cause of action accrues upon the initial claim denial. However, the issue of whether the ERISA cause of action accrued upon initial claim denial or final claim denial was not at issue in *Grosz-Salomon* and was not critical to the holding. As is discussed herein, subsequent case law makes clear that an initial claim denial does not trigger accrual of an ERISA cause of action. See *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013); *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010).

*Heimeshoff*, 134 S. Ct. at 613 (where a claimant appeals a denial of disability benefits, "[t]he plan has 45 days to resolve that appeal, with one 45-day extension available"). Liberty availed itself of the 45-day extension and thus extended its deadline to resolve Vaccaro's appeal to June 8, 2016. Liberty did not issue an appeal decision by that deadline. Vaccaro's ERISA cause of action thus accrued upon the expiration of the June 8, 2016 deadline, and she filed suit on June 10, 2016. The 2015 Policy was in effect in June 2016 therefore the 2015 Policy governs here.

### b. Substantial Compliance Doctrine

Liberty contends that Vaccaro's ERISA cause of action did not accrue upon the expiration of the June 8, 2016 deadline, because Liberty issued an appeal decision only 6 days later on June 14, 2016. According to Liberty, that appeal decision was timely under the doctrine of substantial compliance. Liberty argues further that because the appeal decision was favorable, Vaccaro has never received a final denial of benefits and thus no ERISA cause of action has accrued.

Liberty's substantial compliance argument is unpersuasive. As an initial matter, Liberty supports its argument with a lengthy string citation which provides only parenthetical explanations and no substantive discussion of the cases. Only two of the cases in the string citation are from courts within the Ninth Circuit. In *Sugiyama v. Unum Life Ins. Co. of Am.*, No. 16-CV-05032-PJH, 2017 WL 1374650 (N.D. Cal. Apr. 17, 2017), the district court addressed the scope of the administrative record. The plaintiff argued that the insurer's failure to render a timely decision on her claim closed the administrative record as of the date the insurer's decision was due. After expiration of the deadline for decision, the insurer denied the plaintiff's claim for death and dismemberment benefits under a policy issued to her brother based on a California Highway Patrol report stating that her brother was driving while intoxicated at the time of the car collision that led to his death. *Id.* The district court held that in light of the insurer's continuing communications with the plaintiff regarding the status of her claim, the insurer substantially complied with ERISA regulations. *Id.* at *4. The court therefore declined to limit the administrative record as requested by the plaintiff. *Id.* Nothing in the court's discussion suggests that the insurer's substantial compliance delayed accrual of the plaintiff's ERISA cause of action, and in fact the court stated expressly that because the insurer had failed to issue a decision on the

12

plaintiff's claim within the regulatory deadline, "plaintiff was 'deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies [at law].'" *Id.* (quoting 29 C.F.R. § 2560.503-1(*l*)(1)).

In *Barnes v. AT & T Pension Ben. Plan – Nonbargaines Program*, No. C-08-4058 EMC, 2012 WL 1657054 (N.D. Cal. May 10, 2012), the district court applied the doctrine of substantial compliance to the plaintiff's cause of action for violation of ERISA's notice provisions under ERISA § 503, 29 U.S.C. § 1133. Accrual of an ERISA cause of action was neither raised nor addressed.

The out-of-circuit cases included in the string citation are equally unhelpful. For example, in *Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335 (5th Cir. 2006), the plaintiff filed the complaint before she had exhausted the internal review process but she filed an amended complaint after expiration of the defendant's deadline to respond to her claims. The day after the plaintiff filed her amended complaint, she received notice from the defendant that additional time was necessary to process her claims. *Id.* at 337. The district court dismissed the action based on its determination that the defendant's notice substantially complied with ERISA regulations and thus that the plaintiff had not exhausted her administrative remedies. *Id.* The Fifth Circuit affirmed on the ground that the plaintiff had not exhausted her administrative remedies before filing her original complaint and declined to reach the issue of substantial compliance. *Id.* at 340-41 ("Our conclusion that the district court properly dismissed these claims because they were not exhausted when Galvan filed her original complaint obviates reaching the substantial-compliance issue.").

As discussed above, Vaccaro's ERISA cause of action accrued upon expiration of the June 8, 2016 deadline for Liberty to render an appeal decision. None of the cited cases persuades the Court that Liberty's June 14, 2016 could "unaccrue" the ERISA cause of action under the doctrine of substantial compliance.

Moreover, even if the Court were to accept Liberty's argument that its June 14, 2016 decision was timely, the June 14, 2016 decision did not address Vaccaro's claim that she is entitled to LTD benefits as a Class 1 employee. Liberty did not address that aspect of Vaccaro's

13

claim until its letter of July 12, 2016, in which it affirmed its prior classification of Vaccaro as a Class 2 employee and thus *denied* her claim for benefits as a Class 1 employee. Even if the Court were to accept the July 12, 2016 decision as a timely final claim denial, the 2015 Policy was in effect when the July 12, 2016 decision was issued.

### 3. Policy Amendments Made After Accrual of ERISA Cause of Action do not Apply

Liberty argues that the 2017 Policy applies, relying on *Grosz-Salomon* and its progeny for the proposition that because "Plaintiff's benefits are still actively being paid, the current Policy language controls." Def.'s Mot. at 9, ECF 31. That reliance is misplaced. In *Grosz-Salomon*, the claimant initially received LTD benefits, the policy thereafter was amended, and benefits subsequently were terminated. The Ninth Circuit held that the policy in effect at the time benefits were terminated controlled, because it was termination of benefits that triggered accrual of Grosz-Salomon's ERISA cause of action. *Grosz-Salomon*, 237 F.3d at 1160-61. With respect to Grosz-Salomon's receipt of benefits under the earlier policy, the court stated as follows: "That she became permanently disabled and filed her disability claim while the first policy was in effect is irrelevant; it does not entitle her to invoke that plan's provisions in perpetuity." *Id.* at 1160.

Those circumstances are factually distinguishable from the present case, in which Vaccaro seeks to apply the 2015 Policy which was in effect on the date her claim for benefits as a Class 1 employee was denied, that is, the date her ERISA cause of action accrued. Vaccaro's position is entirely consistent with *Grosz-Salomon* and the other cases upon which Liberty relies. *See, e.g., Cerone v. Reliance Standard Life Ins. Co.*, 9 F. Supp. 3d 1145, 1151 (S.D. Cal. 2014) (governing policy was policy in effect when accidental death benefits were denied); *Dames v. Paul Revere Life Ins. Co.*, 49 F. Supp. 2d 1194, 1200 (D. Or. 1999) (governing policy was policy in effect when benefits were terminated).

Liberty devotes substantial argument to showing that the 2015 Policy could be amended so long as certain procedures were followed, and that those procedures in fact were followed in this case. The Court does not disagree. Nothing in this Order is intended to suggest that Liberty and NetApp could not amend the 2015 Policy or that the 2017 Policy cannot be applied as a general

14

matter. The issue before the Court on the parties' cross-motions is not whether the 2015 Policy properly was amended, but which version of the policy governs this Court's determination of *Vaccaro's* entitlement to benefits. The Ninth Circuit has articulated a bright-line rule which answers that question: when a plan participant files an ERISA action seeking review of a denial of benefits, the court applies the policy in effect when the benefits were denied, that is, when the ERISA cause of action accrued. *See Grosz-Salomon*, 237 F.3d at 1160-61.

Had Liberty granted Vaccaro's claim for LTD benefits under the 2015 Policy in the first instance, and thereafter amended the policy as it did in December 2016, it may well be that Vaccaro would be subject to the 2017 Policy now. However, Liberty did *not* grant Vaccaro's claim in the first instance, and her ERISA cause of action both accrued and was filed before the December 2016 amendment. Liberty has not cited, and the Court has not discovered, any case holding that a court adjudicating an ERISA cause of action under § 502(a)(1)(B) should apply policy amendments made *after* the denial of benefits and *after* the ERISA cause of action is filed.

### D. Vaccaro is a Class 1 Employee under the 2015 Policy

Having concluded that the 2015 Policy governs Vaccaro's claim, the Court next must determine whether Vaccaro is a Class 1 or Class 2 employee under that policy. The Court makes this determination without affording any deference to the claims administrator's decision. *See Muniz*, 623 F.3d at 1295-96.

Vaccaro contends that she is a Class 1 employee because the 2015 Policy defines Class 1 to include "Managers" and she held the title of "Manager" at NetApp. Liberty argues that despite Vaccaro's job title she was not really a manager and therefore she is not a Class 1 employee but rather a Class 2 employee.

#### 1. Applicable Law

"[T]he interpretation of an ERISA insurance policy is governed by a uniform body of federal law." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (emphasis omitted). Under federal law, the court must "interpret terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." *Fier v. Unum Life Ins. Co. of America*, 629 F.3d 1095, 1098 (9th Cir. 2011) (internal quotation marks,

citation, and brackets omitted). "When disputes arise as to the meaning of one or more terms, we first look to the explicit language of the agreement to determine the clear intent of the parties." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000). "An ambiguity exists when the terms or words of a pension plan are subject to more than one reasonable interpretation." *Id.*

Where an ambiguity exists and the standard of review is de novo, the court applies the rule of contra proferentem, under which ambiguities in an insurance contract are construed against the insurer. *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.*, 25 F.3d 794, 799 (9th Cir. 1997). "A typical statement of the rule is that if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted." *Kunin v. Benefit Tr. Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990) (citation omitted).[4] Finally, under the related doctrine of reasonable expectations, the court must "protect the reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance carriers even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *Saltarelli v. The Bob Barker Group Medical Trust*, 35 F.3d 382, 386-87(9th Cir. 1994) (citation omitted).

### 2. Interpretation of the 2015 Policy

The language of the 2015 Policy at issue, defining Class 1 employees, reads as follows:

Class 1:   CEO, President, Vice President, Corporate Officers, Directors, Managers, and Engineers

2015 Policy at SCH-1, Exh. 2 to Madrigal Decl., ECF 31-7.

#### a. The Term "Manager" is Unambiguous

Under a plain reading of the above language, individuals employed by NetApp in the

---

[4] Many of the cases addressing the rule of contra proferentem note that the rule will not be applied where the ERISA plan grants the administrator discretion to construe its terms. *See, e.g., Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 625 (9th Cir. 2007). However, where, as here, the court does not accord the administrator's interpretation deference and instead reviews the claim decision de novo, the rule of contra proferentem does apply. *See Lang*, 25 F.3d at 799.

16

positions of "CEO," "Vice President," "Corporate Officers," "Directors," "Managers," and "Engineers" are in Class 1. The capitalization of the positions indicates that they are formal job titles. The Court thus concludes that a person of average intelligence and experience reasonably would understand that an employee with the job title of "CEO," "Vice President," or – as pertinent here – "Manager" is included in Class 1. Nothing in this provision or any other provision of the 2015 Policy suggests that the listed positions denote anything other than job titles. It is undisputed that Vaccaro's official "Job Title," as stated in the "NetApp Job Description," was "HR Program Mgr 5." NetApp Job Description, Exh. 6 to Madrigal Decl., ECF 31-11. Because the 2015 Policy states that "Managers" are Class 1 employees and NetApp itself identified Vaccaro as a "Manager," the Court concludes that the 2015 Policy unambiguously includes Vaccaro within the definition of Class 1 employees.

Liberty asserts that the term "Manager" as used in the 2015 Policy was not intended to include employees with the title of "Manager" but rather employees with the word "manager" in the "Job Level" listed on their official NetApp Job Description. *See, e.g.,* Madrigal Decl. ¶ 6, ECF 31-5.[5] Vaccaro's "Job Level" per the NetApp Job Description was "Individual Contributor 5." NetApp Job Description, Exh. 6 to Madrigal Decl., ECF 31-11. Because Vaccaro's Job Level identifies her as an individual contributor, and it does not contain the word "manager," Liberty – based on its strained reading of the 2015 Policy – contends that she is not a Class 1 employee. A person of average intelligence and experience who reads the 2015 Policy would have no way of knowing that the term "Manager" does not denote a job title but instead denotes the job *level* identified in the NetApp Job Description. As noted above, the 2015 Policy itself certainly gives no indication that an employee's job level is the key to classification of the employee as Class 1 or Class 2. Accordingly, the Court concludes that the term "Manager" is not reasonably susceptible of the interpretation proffered by Liberty.

---

[5] Confusingly, Liberty asserts that the listed positions correlate with employees' "Job Level Codes." The NetApp Job Descriptions identify the position's "Job Title," its "Job Code," and its "Job Level." NetApp Job Description, Exh. 6 to Madrigal Decl., ECF 31-11. The "Job Code" is a numeric code, in Vaccaro's case, "445." *Id.* The "Job Level" is a written descriptor, in Vaccaro's case, "Individual Contributor 5." *Id.* The Court assumes that Liberty's references to employees' "Job Level Codes" is intended to refer to the written descriptors which constitute the "Job Levels."

17

### b. Vaccaro would Prevail even if "Manager" were Ambiguous

For the reasons discussed above, the Court is not persuaded that the term "Manager" is ambiguous as used in the 2015 Policy. However, even if the Court were to find the term to be reasonably susceptible of the interpretation proffered by Liberty, and thus ambiguous, the Court would be required to adopt the construction that is most favorable to Vaccaro under the rule of contra proferentem. *See Kunin*, 910 F.2d at 539.

Application of the related doctrine of reasonable expectations also would lead the Court to construe "Manager" to refer to job title. As noted above, an insured reading the 2015 Policy reasonably would understand the term "Manager" to cover employees with the title "Manager." The objectively reasonable expectation of the insured controls even if the resulting policy interpretation is "contrary to the expressed intention of the insurer." *See Saltarelli*, 35 F.3d at 387. Liberty argues that the reasonable expectations doctrine does not apply here because Vaccaro did not submit evidence showing that she subjectively relied on the policy interpretation that she now proffers. Liberty relies on out-of-circuit authority and one district court case applying such authority in arguing that the reasonable expectations doctrine requires proof of the insured's subjective expectations. *See, e.g., Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51 (1st Cir. 2001); *Hightshue v. AIG Life Ins. Co.*, 135, 1144 (7th Cir. 1998); *Young v. Prudential Ins. Co. of Am.*, No. SACV 08-0541 AG (MLGx), 2009 WL 2905891 (C.D. Cal. Sept. 8, 2009).[6] However, the Ninth Circuit cases addressing the reasonable expectations doctrine in the ERISA context indicate that the court does not look to the claimant's subjective intent but rather to "the claimant's objectively reasonable expectations of coverage." *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554-55 (9th Cir. 1995) (citing *Saltarelli*, 35 F.3d at 387). The Court thus concludes that the absence of evidence regarding Vaccaro's subjective expectations would not preclude application of the doctrine here.

---

[6] A second district court case cited by Liberty for the proposition that "[w]here an insured accepts a policy without reading it, the insured cannot complain that the policy was not what they expected," did not address the reasonable expectations doctrine in the context of ERISA but rather the element of reliance in a state law fraud claim. *See Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204 (E.D. Cal. 2010)

18

In any event, even if the reasonable expectations doctrine were not applied in this case, Vaccaro would prevail under a plain reading of the 2015 policy or, if an ambiguity were found to exist, under the rule of contra proferentem. Accordingly, the Court concludes that Vaccaro is a Class 1 employee under the 2015 Policy.

### E. Relief Sought

In light of the Court's findings of facts and conclusions of law, above, Vaccaro is entitled to judgment that she is entitled to past-due LTD benefits as a Class 1 employee. Based on the representations of the parties, it appears that at least some months of past-due benefits have been paid to Vaccaro by Liberty. However, given the lapse of time between the parties' briefing and this order, it is not clear that all past-due benefits have been paid.

Vaccaro also is entitled to judgment that she is entitled to future LTD benefits as a Class 1 employee.

Vaccaro seeks an injunction requiring Liberty to pay monthly benefits throughout the term of the 2015 Policy without requiring her to participate in any further claims procedures. *Id.* Vaccaro has not presented any evidence or argument excusing her from providing proof of continuing disability as is required under the 2015 Policy. *See* 2015 Policy at LTD-26.4, Exh. 2 to Madrigal Decl., ECF 31-7. Accordingly, she is not entitled to the requested injunction.

Finally, Vaccaro seeks an award of attorneys' fees and costs. "In an ERISA action, 'the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.'" *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120 (9th Cir. 2010) (quoting 29 U.S.C. § 1132(g)(1)). In order to obtain an award under § 1132(g)(1), the claimant need not be the "prevailing party," but he or she must show "some degree of success on the merits." *Id.* Once a court determines that a litigant has achieved "some degree of success on the merits," the court must determine whether the five factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980), weigh in favor of awarding that litigant fees and costs. *Id.* at 1121. "Only if both of these conditions are met may a district court award fees." *Id.* at 1122. Vaccaro clearly can meet the first condition, some degree of success on the merits. She may file an appropriate motion to establish that the *Hummell* factors weigh in favor of awarding fees and costs in this case.

## IV. ORDER

Consistent with the findings of fact and conclusions of law set forth above,

(1) Vaccaro's Rule 52 motion for judgment is GRANTED;

(2) Liberty's Rule 52 motion for judgment is DENIED; and

(3) Vaccaro's shall submit a proposed judgment after it is approved as to form by Liberty.

Dated: November 20, 2017

_____
BETH LABSON FREEMAN
United States District Judge